Gilbert Hooks et al., Appellants, v. Barney Forst et al.

*Lease—Oil and gas lease—Parol rescission.*

Where the lessees under an oil and gas lease have an absolute right to rescind the lease at any time, and such lessees never enter into possession of the demised premises, the rights and privileges under the lease may be surrendered by parol.

An oil and gas lease gave the lessor no right to rescind, but provided that the lessees "shall have the right at any time to surrender up this lease, and be released from all money due, and conditions unfulfilled." The lessees did not absolutely covenant to develop the land, but only agreed to bore or pay one hundred dollars per month if they did not. The lessees never entered into possession of the land. The evidence tended to show that after two monthly payments had been made, two of the three lessees asked the lessor for time on the third monthly payment and that it was agreed between them that the time should be extended three weeks, and if the money was not then paid, they would surrender the lease. At the end of three weeks the money was not paid, and one of the lessees told the lessor, that he should go on and lease to any one, and that the lease would be re-

turned. The lease was never formally re-delivered. Sixteen months afterwards the lessor leased the premises to other parties. *Held*, that the evidence was sufficient to establish a rescission of the lease.

In such a case a tender of the monthly rental after the rescission had been consummated, could not revive the lessees' rights or privileges.

*Lease—Joint grantees—Declarations—Evidence.*

Under the above lease the lessees were not tenants in common, but were joint grantees of a right or privilege which had never been exercised, and were bound jointly to perform the covenants of the contract on which the right depended; the obligation was not severable. The declarations and acts of two of the lessees were therefore binding upon the third.

Argued Oct. 15, 1894. Appeal, No. 67, Oct. T., 1893, by plaintiffs, from judgment of C. P. Butler Co., Sept. T, 1891, No. 28, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment. Before HAZEN, P. J.

At the trial it appeared that, on Oct. 30, 1889, Thomas Anderson, who was then the owner of the land in controversy, executed a lease which was in part as follows :

" Agreement made and entered into this 30th day of October A. D. 1889, by and between Thomas Anderson of the county of Butler and state of Pennsylvania, party of the first part, and F. M. Campbell, M. Lahey and W. R. Stoughton, parties of the second part, Witnesseth:

" That the party of the first part, for and in consideration of the sum of one dollar to him in hand well and truly paid, the receipt of which he hereby acknowledges, and in further consideration of the covenants and agreements hereinafter mentioned, does covenant and agree to lease and by these presents has leased and granted the exclusive right unto the parties of the second part, their heirs and assigns, for the purpose of operating and drilling for petroleum and gas, to lay pipe lines, erect the necessary buildings, release and subdivide, all of that certain tract of land situate in Adams township, Butler county, and state of Pennsylvania, bounded and described . . . .

" Party of the second part, their heirs or assigns to have and to hold the said premises for and during the term of fifteen years from the date hereof, and so long thereafter as oil or gas can be produced in paying quantities.

" The party of the second part, their heirs or assigns, agree to give to the party of the first part the one eighth part of all the petroleum obtained from said premises as produced in the crude state, the said one-eighth part of the petroleum to be set apart in the pipe line running said petroleum to the credit or benefit of the said party of the first part. The said party of the first part is to fully use and enjoy the premises for the purpose of tillage, except such parts as shall be necessary for said mining purposes, and a right of way over and across said premises to the place or places of mining or operating. The said party of the second part is further to have the privilege of using sufficient gas and water from the premises herein leased to run the necessary engines ; the right to remove any machinery, fixtures and buildings placed on the said premises by the party of the second part or those acting under them, and is not to put down any well for oil on the lands hereby leased within ten rods of the buildings now on the premises without the consent of the party of the first part.

" It is agreed that if gas is found in paying quantities the consideration in full to the party of the first part for gas shall be two hundred dollars per annum for the gas of each well when utilized.

" The party of the second part hereby agrees to pay the sum of one hundred dollars per month, the receipt of first payment is hereby acknowledged, until one well is completed.

" November the 30th, 1889, received from Lahey, Campbell and Stoughton, $100 for rent on lease in full to December the 30th, 1889.

" It is further agreed that the second party, their heirs or assigns, shall have the right at any time to surrender up this lease and be released from all monies due and conditions unfulfilled, and then and from that time this lease and agreement shall be null and void and no longer binding on either party, and the payments which shall have been made be held by the party of the first part as the full stipulated damages for the non-fulfillment of the foregoing contract."

Thomas Anderson, the lessor, a witness for plaintiff, was asked: " Q. State at the time the lease was made to the plaintiffs here, Campbell and Lahey, what your contract was and what was said between you and Campbell, who made the lease, as to whether

the payments were to be made in advance or not? Plaintiffs' counsel object until the purpose of the inquiry is set forth. Offered by the defence for the purpose of showing that these payments were to be made in advance ; that the fact that it was not inserted in the lease was an omission of the scrivener, preceded by the proof of the parties that they treated it as an advance payment. Plaintiffs' counsel object, because it is an offer to · modify or change the writing in evidence, the lease of the plaintiffs ; there is no allegation that it will be followed by proof of anything that would justify the introduction of the testimony under the rules of evidence ; that there is no notice given in the papers on file, the abstract of title or elsewhere. That they do not propose to follow this with the testimony of another person, which is necessary to justify the introduction of this kind of testimony—to sustain the mistake or omission by what is equivalent to two witnesses. Defendants' counsel supplement their offer by adding: This to be followed by the testimony required. The Court: We will treat it as in the papers under the statements and overrule the objection. Exception. [10]

Other facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

" [The right in land cannot be forfeited unless for a good and valuable consideration, but this, gentlemen, as we have already explained, is an oil lease, and the right secured is the right to search for oil or gas, or both, upon the land described in it, but the right to that oil or gas does not become perfected until it is found. Such being the condition and this an executory contract, we have no hesitation in saying that if the parties thereto who were able to contract, the subject-matter being lawful, did contract in parol, their minds coming together upon that matter and they agreed, and that agreement was to surrender the lease if a condition named, to wit, the payment of money at a certain time, was not paid, that then and thereafter the lease should be surrendered ; under a lease or contract of this character and before any moneys had been expended under it by the lessees, except, if you please, that which they paid monthly to keep it alive, and time had passed beyond which their payments had covered, then they might surrender and that surrender be binding, but the measure of proof to establish that to the satisfac-

tion of the jury, must be precise, clear and satisfactory. If the proofs fail to come up to that measure, then the fact is not established as required.

" As a principle the party cannot call upon a court of equity for specific performance unless he has shown himself ready, desirous, prompt and eager. It would be dangerous to permit parties to lie by with a view to see whether the contract will prove a gaining or a losing bargain, and according to the event either to abandon it, or, considering time as nothing, to claim a specific performance, which is always the subject of discretion. Applying that principle, if these parties were not excused from making the payments monthly, or prevented by Anderson, to whom the money should have been paid or tendered, but the parties lay by and neglected for a long time, a number of months, waiting to see whether the bargain would be good or bad and to take advantage of it, and that clearly appears by the proofs, then we think, gentlemen, it strengthens largely the position taken by the defendants. . . . If you find for the plaintiffs it cannot be, under the proofs in this case, for any less than all.] " [11]

Defendant's points were among others as follows :

" 2. This is an equitable action of ejectment on an imperfect or inchoate title, the plaintiffs being out of possession ; they must show that they complied with all the provisions of the lease up to the bringing of this suit, or tendered performance monthly, until suit was brought, or were prevented from performance by the defendants or some one else, in order to recover in this case. *Answer :* This is affirmed unless at the same time the jury find that the lessees were prevented or excused from so doing or so performing by Thomas Anderson, the lessor." [1]

" 3. This being an equitable ejectment, the court, as the chancellor, is to weigh the proof of the performance of the covenants of the plaintiff, and if the proof is not full, clear and satisfactory, the duty of the court is to withdraw it from the jury and direct a verdict for the defendant. *Answer :* This is affirmed, and all the evidence is submitted to the jury for the jury to pass upon." [2]

" 4. If the jury is satisfied from the evidence that Campbell and Lahey, the owners of the lease, when they went to An-

derson to get an extension in January, 1890, agreed with Anderson that if he would extend the time of payment three weeks, they would make the payment promptly or surrender the lease, and make no claim to it thereafter, this was a binding contract for a good consideration, and not having paid, it was a surrender of the right thereunder, and Anderson could thereafter make a valid lease. *Answer:* This is affirmed, but the measure of proof required, is, that the evidence must be full, clear and satisfactory." [3]

" 5. If the jury find that the plaintiffs, or some of them, told Anderson to go on and lease the land and do the best he could in it, and Anderson acted on this direction and leased the land, the plaintiffs are estopped from setting up their title now." Affirmed. [4]

" 6. If the jury are satisfied from the evidence that the plaintiffs did nothing to operate their lease and paid no rentals or offered to pay none for a period of about sixteen months before their suit was brought, unexplained, the jury may find that they had abandoned and surrendered their right in the lease." Affirmed. [5]

" 8. The lease under which plaintiffs claim title, dated Oct. 30, 1889, contains a covenant by which they and their assigns had the right to surrender and rescind the lease at any time, and if the plaintiffs, by any oral expression assented to by Thomas Anderson, rescinded the lease, it would be a good surrender in law of the lease, although the written lease was not itself actually delivered into the possession of Thomas Anderson." Affirmed. [6]

Plaintiffs' points were among others as follows:

" 7. A surrender of this lease is not shown by an agreement to surrender, nor is the option to surrender consummated by merely an agreement to it; an actual surrender alone is sufficient. *Answer:* This is not affirmed. An actual delivery of the lease, the paper signed by the parties, is not absolutely necessary to constitute a surrender of the rights secured by it, but an agreement by the parties in parol to surrender is sufficient, when established by evidence precise, clear and indubitable." [7]

" 8. The promise that is alleged by the defendants to pay rentals a certain time specified, or give up the lease, is not suffi-

cient under our statute to destroy the plaintiffs' lease. *Answer :* This is not affirmed. This is an oil lease, and for explorations for oil or gas, and not a vested right for either oil or gas until found in paying quantities, and may be surrendered by parol agreement, but the evidence to establish such an agreement must be clear and indubitable." [8]

" 9. After the refusal of Thomas Anderson to receive rentals, and his declaration that the lease was dead, the plaintiffs had the right to treat his refusal as final, and it was not incumbent on them to tender the rentals before bringing suit. *Answer :* This is not affirmed unless plaintiffs were prevented or excused from payment or tendering payment monthly, by the lessor." [9]

Verdict and judgment for defendants. Plaintiffs appealed.

*Errors assigned* were (1–11) above instructions and ruling, quoting instructions and bill of exceptions, but not. quoting evidence.

*John M. Thompson, W. C. Thompson* and *W. H. Lusk* with him, for appellants.

*Lev. McQuistion,* for appellees, cited: Greider's Ap., 5 Pa. 422; McKiney v. Reader, 7 Watts, 123; 1 Washb. R. Prop., p. 353; Kreutz v. McKnight, 53 Pa. 319; Barnhart v. Lockwood, 152 Pa. 82; Auer v. Penn, 92 Pa. 444; Munroe v. Armstrong, 96 Pa. 311; Oil Co. v. Fretts, 152 Pa. 456.

OPINION BY MR. JUSTICE DEAN, Jan. 7, 1895 :
Thomas Anderson was the owner of a tract of land containing about fifty acres, in Adams township, Butler county. On the 30th of October, 1889, by writing duly executed, he granted to Campbell, Lahey and Stoughton, the exclusive right to drill and operate for oil and gas on this land; the term was for fifteen years, and so long thereafter as oil or gas was produced in paying quantities. In consideration thereof, the lessees agreed to give to Anderson one eighth part of all the oil produced; if gas was found, $200 annually was to be paid for each well, and further, they were to pay to Anderson $100 per month rent until one well was completed. Anderson reserved the right to the surface for cultivation. The lessees stipulated for the right to surrender ·

the lease at any time, and thus relieve themselves from further obligation, but the payments theretofore made were to be retained by Anderson.

The lessees paid $100, the first month's rental, at the execution of the lease on the 30th of October, 1889, and also a second $100 on the 30th of November following. They made no further payments, nor did they do anything in the way of development. When the third $100 was due, 1st January, 1890, the lessees were unable to pay it, and asked Anderson for an extension of time; this, defendants allege, was granted on the condition, that if not paid at the end of three weeks, the lease should be surrendered or rescinded. The money was not paid, and defendants allege, that these lessees and Anderson, in pursuance of the understanding before had, mutually agreed to a rescission, and Anderson was verbally authorized by them to lease to others.

On the 17th of June, 1891, about 16 months after the alleged rescission, Anderson leased the same premises to defendants, who went into possession for the purpose of boring for oil, and made successful developments; then plaintiffs brought this ejectment, claiming the exclusive right under their first lease. In the meantime Campbell transferred his interest to Hooks. On the trial, there was conflicting evidence as to the fact of rescission, which the court submitted to the jury, who found for defendant. The court afterwards entered judgment on the verdict, and we have th s appeal by plaintiffs, the first lessees.

Although there are many assignments of error, the real question, on which the case turns, is, was there a rescission of plaintiffs' lease? Anderson had no right to rescind for non-payment of the $100 monthly rental, but he had a right to enforce payment by personal action against the lessees on each monthly default; unless this were avoided, any right they had would, in a comparatively short time, have been divested. The lessees had the right at any time to surrender the lease, and relieve themselves from liability for the fast recurring monthly payments. In this event, they lost what they had paid, but nothing more. They had paid two monthly installments, and defaulted on the third. Defendants' evidence showed that, at this time, Campbell and Lahey called on Anderson at his barn, and asked for time on the payment then due; it was agreed between them

that the time should be extended three weeks, and if the money was not then paid, they would surrender the lease; at the end of that time, Lahey told Anderson he could not raise the money; that he, Anderson, should go on and lease to any one, and he would bring the lease back; that he would have delivered it then, but had forgotten it; he told Anderson half a dozen of times to go ahead and lease the land, and that he would fetch the lease back. As to the agreement to surrender, if the money was not paid in three weeks, Anderson is corroborated in all his material statements by four witnesses. Campbell, one of the lessees, on cross-examination admitted, substantially, the agreement as alleged by defendants. The decided weight of the evidence shows that there was a positive agreement to rescind, if the money was not paid at the end of three weeks; it was not paid, and one of the lessees told Anderson to go on and lease to others; Campbell even admits, that he had the lease along for the purpose of giving it to Anderson at one time, but, because of some fancied personal insult to himself, did not do so. It was not necessary to a rescission, that there should be a formal re-delivery or cancellation of the lease. Any course of conduct of the parties clearly evincing an intention to rescind a contract such as this, works a rescission of it. As is said in McKinney v. Reader, 7 Watts, 123: " What is wanting to the rescission of an executory contract, is the assent of the parties; and it may be signified by their words or acts. The rescission of a lease by express words, is called a surrender in fact, and when by acts so irreconcilable to the continuance of the tenure as to imply the same thing, it is called a surrender in law."

This was said of a lease for a term less than three years, and as the lease itself, under the statute of frauds, was not required to be in writing, it may be argued that a rescission of it could be established without any special or formal surrender; but the principle in that case is equally applicable to this. Here it is stipulated that the lessees " shall have the right at any time to surrender up this lease, and be released from all monies due and conditions unfulfilled." There was no right in the lessor to rescind; there was a right in the lessees to do so at any time; as to them, the continuance of the term was dependent on their will; they did not absolutely covenant to develop the land; they only agreed to bore or pay $100 per month if they did not,

with the option to relieve themselves of this obligation when ever they chose. Such a right or privilege could be surrendered by parol, for the possession, up until operations commenced, was only constructive. There was no actual possession to surrender on part of lessees, therefore none to be resumed on part of lessor to complete a rescission. They had no vested right in oil and gas under the land, until, by the necessary expenditure, they demonstrated their existence: Venture Oil Co. v. Fretts, 152 Pa. 456. The alleged tender after the rescission, even if it had been proven, would not, if rescission had been consummated, have revived the lessees' right or privilege.

On the evidence bearing on a rescission or surrender of the contract, the learned judge of the court below gave full and explicit instructions to the jury, of which the appellant certainly has no right to complain. While he properly said, such a right as lessees claimed might be surrendered by parol agreement, he also said the evidence to establish such agreement must be clear, precise and undoubted; that the minds of both parties must have assented to the same thing in the same sense. On this, the main question in the case, there was no error.

As to the argument that the declarations and acts of Campbell and Lahey could not affect the right of Stoughton, the other lessee, who was not present, it would be well made if they had been tenants in common of the land; one tenant in common cannot divest the estate of his co-tenant by declarations or deed. But these lessees were not tenants in common; they were joint grantees of a right or privileges which had never been exercised, and were bound jointly to perform the covenants of the contract on which the right depended; the obligation was not severable. When Campbell and Lahey secured the extension, they secured it for all; Stoughton had the benefit of it; he never paid or offered to pay, and never, so far as appears, objected to the acts of the other two. When he makes this objection, he stands here in the attitude of not consenting to the two monthly installments which were paid, not joining in the solicitation for an extension which was granted, not authorizing or consenting to the tender which was alleged to have been made after the rescission, not paying or offering to pay to Anderson any one of the sixteen monthly rentals due before the commencement of the suit. Starting with the lease to them

jointly, down through all the subsequent conduct of the parties, there was ample evidence to warrant the jury in finding that Campbell and Lahey, with the knowledge and consent of Stoughton, acted throughout for all of them; if so, he was bound by their acts. The plaintiffs asked no instruction in the court below on the evidence bearing on this question, although they presented eleven written prayers for instructions to the jury. In the general instructions, however, more than once, the court said to the jury that, unless defendants had proven, by evidence clear, precise and indubitable, that the lessees had agreed to a surrender or rescission of the contract, the plaintiffs were entitled to a verdict. This was substantially an instruction that, unless all three lessees had agreed to a surrender of the lease, the case was with the plaintiffs. If more specific instructions on the evidence were desired, plaintiffs' counsel should have asked for them in the court below.

There is nothing of merit in any of the assignments of error; they are all overruled; the judgment is affirmed and appeal is dismissed.